1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9           FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11  MARK HAMANN,                      No. C 07-06008 TEH (PR)

12           Petitioner,

13       v.                           ORDER DENYING PETITION FOR WRIT
                                      OF HABEAS CORPUS
14  KEN CLARK, Warden,

15           Respondent.

16  _____/

17

18       Pro se Petitioner Mark Hamann seeks a writ of habeas

19  corpus under 28 U.S.C. § 2254, which, for the reasons that follow,

20  the Court denies.

21

22                               I

23       On November 20, 2005, Petitioner was charged in Marin

24  County Superior Court with four felonies:  mayhem, assault with

25  intent to commit rape, false imprisonment by violence, and

26  residential burglary.  Doc. #21-2, Ex. A1 at 5-9.

27       On November 28, 2005, Petitioner pled guilty to mayhem and

28  false imprisonment by violence, with the understanding the other

**United States District Court**
For the Northern District of California

counts would be dismissed with <u>Harvey</u>[1] waivers, which allowed for the consideration of the facts underlying the dismissed charges when determining Petitioner's sentence.  Doc. #21-2, Ex. B1 at 1-17.

On February 21, 2006, the court sentenced Petitioner to state prison for four years on the mayhem count and eight months on the false imprisonment by violence count, to run consecutively. Doc. #21-2, Ex. B2, 50-51.  On appeal, Petitioner raised a single sentencing issue, and on February 2, 2007, the California Court of Appeal affirmed the judgment.  Doc. #21-2, Ex. C4.

Petitioner then filed in Marin County Superior Court a petition for writ of habeas corpus raising the three issues he now presents to this Court for review.  Doc. #21-2, Ex. F1.  The state superior court summarily denied the petition on June 6, 2007, and again on July 25, 2007 after Petitioner requested reconsideration. Doc. #21-2, Ex. F2 & F3.

The California Court of Appeal summarily denied the petition he filed there on August 16, 2007.  Doc. #21-2, Ex. E2. The California Supreme Court denied his Petition for Review on October 17, 2007.  Doc. #21-2, Ex. D2.

On November 28, 2007, Petitioner filed the instant federal Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254.  Doc. #1. On March 27, 2008, the Court found the Petition stated cognizable claims for relief and ordered Respondent to show cause why a writ of habeas corpus should not be granted.  Doc. #4.  Respondent has filed an Answer and Petitioner has filed a Traverse.  Doc. ## 21, 22.

---

[1] <u>People v. Harvey</u>, 25 Cal.3d 754 (1979).

**United States District Court**
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

II

The California Court of Appeal summarized the factual background of the case as follows:

> Defendant and Jane Doe dated for a period of two years.  On the evening of August 19, 2005, they were arguing and the police responded to Doe's call for help.  The police found that both parties were under the influence and directed defendant to leave.  Doe called the police again later that evening.  This time she reported that defendant entered her apartment without permission and took her car.
>
> At 5:10 a.m. the following morning, the police responded to defendant's apartment after receiving a call from a neighbor who heard screaming coming from the residence.  There was no response at the door but the police could hear a repetitive knocking sound and a woman screaming.  The police forced entry into the apartment and found Doe in the hallway with her back against the wall.  Her face was covered in blood and she had duct tape partially covering her mouth.  She told the police that defendant tried to kill her and that he attempted to sexually assault her.  Defendant was arrested and when advised of the charges, said, "attempted murder?  I'm going to kill that cunt!"
>
> The police took Doe to the hospital where she was treated for blunt facial trauma, jaw contusion and a one-inch laceration under her tongue.  She told the attending nurse that defendant punched her in the face, shoved a towel and plastic bag in her mouth and applied duct tape to her mouth.  She said that if the neighbor had not called the police, defendant would have been able to sexually assault and kill her.
>
> Doe reported to the police that after going to bed that evening, she was awakened by defendant who was pulling things out of her dresser. Defendant demanded sex.  When she refused, he knocked her to the floor of the bedroom and pinned her arms to the floor.  He began punching her about her face and choking her.  He also pressed his thumbs onto her eyes and told her he was going to blind her.

**United States District Court**
For the Northern District of California

1
2
3
4
5
6

          Doe began to scream but defendant continued
     to punch her and began slamming her head against
     the floor.  Defendant threatened to rip her
     tongue out if she did not stop screaming.
     Defendant grabbed her tongue and began pulling
     her tongue out of her mouth.  He stuffed socks
     or towels into her mouth and used duct tape to
     tape her mouth shut.  He also tried to pull down
     her pajama bottoms but she continually kicked
     and screamed.

7
8
9

          Defendant was charged with four felonies -
     mayhem, assault with intent to commit rape,
     false imprisonment by violence, and residential
     burglary.  He pled guilty to the mayhem and
     false imprisonment counts; the court dismissed
     the remaining counts with a <u>Harvey</u> waiver.

10   Doc #21-2, Ex. C4 at 1-2 (footnote omitted).

11

12                               III

13        Under the Antiterrorism and Effective Death Penalty Act of

14   1996 ("AEDPA"), codified under 28 U.S.C. § 2254, a federal court may

15   not grant a writ of habeas corpus on any claim adjudicated on the

16   merits in state court unless the adjudication:  "(1) resulted in a

17   decision that was contrary to, or involved an unreasonable

18   application of, clearly established federal law, as determined by

19   the Supreme Court of the United States; or (2) resulted in a

20   decision that was based on an unreasonable determination of the

21   facts in light of the evidence presented in the State court

22   proceeding."  28 U.S.C. § 2254(d).

23        "Contrary to" requires a finding that the state court's

24   conclusion of law is opposite Supreme Court precedent or the state

25   court's decision differs from Supreme Court precedent on a set of

26   materially indistinguishable facts.  <u>Williams v. Taylor</u>, 529 U.S.

27   362, 412-13 (2000).  A state court "unreasonably appli[es]" federal

28   law if it identifies the correct governing legal principle from

                                     4

Supreme Court precedent, "but unreasonably applies that principle to the facts of the prisoner's case." <u>Id.</u> at 413.  A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." <u>Id.</u> at 409.

The only definitive source of clearly established federal law under 28 U.S.C. § 2254(d) is in the holdings, as opposed to the dicta, of the Supreme Court as of the time of the state court decision. <u>Williams</u>, 529 U.S. at 412.  While circuit law may be "persuasive authority" for purposes of determining whether a state court decision is an unreasonable application of Supreme Court precedent, only the Supreme Court's holdings are binding on the state courts and only those holdings need be "reasonably" applied. <u>Clark v. Murphy</u>, 331 F.3d 1062, 1069 (9th Cir. 2003).

Where, as here, the state court gives no reasoned explanation of its decision on a petitioner's federal claim and there is no reasoned lower court decision on the claim, a review of the record is the only means of deciding whether the state court's decision was objectively reasonable.  <u>See Plascencia v. Alameida</u>, 467 F.3d 1190, 1197-98 (9th Cir. 2006); <u>Himes v. Thompson</u>, 336 F.3d 848, 853 (9th Cir. 2003).  When confronted with such a state court decision, a federal court should conduct "an independent review of the record" to determine whether the state court's decision was an unreasonable application of clearly established federal law. <u>Plascencia</u>, 467 F.3d at 1198; <u>Himes</u>, 336 F.3d at 853.

A defendant who pleads guilty cannot later raise in habeas corpus proceedings independent claims relating to the deprivation of constitutional rights that occurred before he entered his plea. <u>See</u>

Haring v. Prosise, 462 U.S. 306, 319-20 (1983) (guilty plea forecloses consideration of pre-plea constitutional deprivations); Tollett v. Henderson, 411 U.S. 258, 267 (1973) (same).  The only challenges to a guilty plea left open in federal habeas corpus are the voluntary and intelligent character of the plea and the nature of the advice of counsel to plead.  Hill v. Lockhart, 474 U.S. 52, 56-57 (1985); Tollett, 411 U.S. at 267.

## IV

Petitioner seeks habeas relief under 28 U.S.C. § 2254 based on three claims:  (1) he was denied due process when the trial court failed to admonish him properly as to the consequences of his plea; (2) trial counsel provided ineffective assistance when he advised Petitioner to plead guilty; and (3) his due process rights were violated when the court admitted false evidence at the sentencing hearing.

## A

Petitioner claims he was denied his right to due process because the trial court failed to admonish him properly of the consequences of pleading guilty to mayhem.  Specifically, Petitioner claims the court did not inform him that entering a plea of guilty to a mayhem, a violent offense listed under California Penal Code section 667.5(c), would subject him to a more limited conduct credits formula under California Penal Code section 2933.1(a). Under this stricter formula, Petitioner would not accrue more than fifteen percent of worktime credit while serving his sentence; therefore, he could not reduce his term of imprisonment to less than

eighty-five percent of the original term imposed.  <u>See</u> Cal. Penal
Code §§ 667.5(c)(2) & 2933.1(a).

Due process requires a guilty plea to be both knowing and
voluntary because it constitutes the waiver of three constitutional
rights:  the right to a jury trial, the right to confront one's
accusers, and the privilege against self-incrimination.  <u>See</u> <u>Boykin</u>
<u>v. Alabama</u>, 395 U.S. 238, 242-43 (1969).  A plea of guilty is
voluntary only if it is entered by one fully aware of the *direct*
consequences of his plea."  <u>Torrey v. Estelle</u>, 842 F.2d 234, 235
(9th Cir. 1988) (internal citations omitted) (emphasis in original).
This requires that a defendant be advised of the range of allowable
punishment that will result from his plea.  <u>See Torrey</u>, 842 F.2d at
235.  A court need not advise a defendant of "all the possible
collateral consequences" of the plea, however.  <u>Id.</u>  "The
distinction between a direct and collateral consequence of a plea
turns on whether the result represents a definite, immediate and
largely automatic effect on the range of the defendant's
punishment."  <u>Id.</u> at 236 (internal citations omitted).  A
consequence is often deemed "collateral" when its occurrence
"depends upon the defendant's conduct" and its implementation is
"purely discretionary."  <u>Id.</u>

Here, the record shows Petitioner was informed of the
direct consequences of his plea.  The trial court advised Petitioner
of the maximum sentence he faced if he were to plead guilty.[2]  Doc.

[2]  Although the trial court misstated that by pleading guilty to
mayhem and false imprisonment by violence, Petitioner faced a maximum
combined sentence of eight years and eight months in state prison, <u>see</u>
Doc. #21-2, Ex. B1 at 6, 7, the plea of guilty form Petitioner
initialed correctly indicated the combined maximum sentence was eleven
years, <u>see</u> Doc. #21-2, Ex. A1 at 10, and the trial court correctly

United States District Court
For the Northern District of California

#21-2, Ex. B1 at 6, 7.  The trial court also advised Petitioner of the maximum parole term he faced upon his release from prison.[3]  Id. at 7.

Further, by initialing the plea of guilty form, Petitioner indicated that:  (1) he wished to plead guilty to mayhem and false imprisonment by violence; (2) he understood the nature of the charges against him; (3) he had discussed with trial counsel the nature of the charges against him and any possible defenses; (4) trial counsel "explained [Petitioner's] constitutional rights to [him]" and that he "had adequate time to discuss the case with [trial counsel];" (5) trial counsel "explained the possible sentence and sanctions which could be imposed as a result of [his] plea of guilty" and that sentence was a maximum of 11 years in state prison; and (6) he would be subject to a period of parole not to exceed three years.  And at the sentencing hearing, Petitioner stated he had read and understood the plea of guilty form, he had no questions about the form, he had enough time to discuss his case with his attorney, and he was satisfied his attorney's performance and their communication.  Doc. #21-2, Ex. B1 at 5-6.

The admonishments by the trial court regarding the "range of allowable punishment" that were definite to result from Petitioner's plea were exactly what was required under the law.  See

informed Petitioner of his maximum possible sentence at the beginning of the sentencing hearing.  See Doc. #21-2, Ex. B2 at 20-21.

[3]  Although the trial court misstated that by pleading guilty to mayhem and false imprisonment by violence, Petitioner's maximum parole term was six years, three years on each count, the plea of guilty form Petitioner initialed correctly indicated the maximum term of parole was three years, see Doc. #21-2, Ex. A1 at 10, and the trial court correctly indicated the maximum term of parole at the sentencing hearing.  See Doc. #21-2, Ex. B2 at 51.

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

<u>Torrey</u>, 842 F.2d at 235.   Contrary to Petitioner's claim, the court was not required to advise him of the rate at which he might accrue conduct credits, because that is a collateral, rather than a direct, consequence of a guilty plea.   <u>See</u> <u>People v. Barella</u>, 20 Cal.4th 261, 263 (1999) ("neither the federal or the state Constitution, nor California's judicially declared rules of criminal procedure, require[] [a] trial court to advise [a] defendant, prior to his guilty plea, that he would be ineligible for release from prison until he had served four-fifths of his sentence").   According to California Penal Code section 2933:  [i]t is the intent of the Legislature that persons convicted of a crime and sentenced to . . . state prison . . . serve the entire sentence imposed by the court, except for a reduction in the time served . . . for performance in work, training or education programs . . . ."  The accrual of conduct credits, however, is dependent upon both the discretion of the institution where the prisoner is housed, and the prisoner's willingness to participate in programs.   <u>See</u> <u>id.</u>

Because the rate at which conduct credits accrue depends in part "upon the defendant's conduct," and in part upon the administration of the particular institution where the prisoner is housed, conduct credit accrual rate cannot be considered "a definite, immediate and largely automatic effect on the range of the defendant's punishment."  <u>See</u> <u>Torrey</u>, 842 F.2d at 236.   As such, it is a collateral, rather than a direct, consequence of a plea.   <u>Id.</u> Accordingly, Petitioner is not entitled to federal habeas relief on his claim that he was denied due process when the trial court failed to admonish him properly as to the consequences of his plea.   <u>See</u> 28 U.S.C. § 2254(d).

1

**B**

2          Petitioner claims he received ineffective assistance of

3    counsel because trial counsel wrongly predicted the trial court

4    would sentence him to probation following the plea agreement.

5    Rather than probation, the trial court sentenced Petitioner to a

6    term of four years, eight months in state prison.  According to

7    Petitioner, "[his] public defender said [he] would be granted

8    probation if [he] pled guilty to mayhem.  [He] was never given a

9    full understanding of the nature of [his] charges and the

10   consequences of a guilty plea."  Doc. #1 at 8.

11          A defendant seeking to challenge the validity of his

12   guilty plea on the ground of ineffective assistance of counsel must

13   satisfy the two-part standard of <u>Strickland v. Washington</u>, 466 U.S.

14   668 (1984) by showing "that (1) his 'counsel's representation fell

15   below an objective standard of reasonableness,' and (2) 'there is a

16   reasonable probability that, but for [his] counsel's errors, he

17   would not have pleaded guilty and would have insisted on going to

18   trial."  <u>Womack v. Del Papa</u>, 497 F.3d 998, 1002 (9th Cir. 2007)

19   (quoting Hill, 474 U.S. at 57-59).  In order to establish

20   ineffective assistance from counsel's inaccurate prediction

21   regarding the likely sentence following a guilty plea, Petitioner

22   must establish a "'gross mischaracterization of the likely outcome'

23   of a plea bargain 'combined with . . . erroneous advice on the

24   probable effects of going to trial.'"  <u>Sophanthavong v. Palmateer</u>,

25   378 F.3d 859, 868 (9th Cir. 2004) (citing <u>United States v. Keller</u>,

26   902 F.2d 1391, 1394 (9th Cir. 1990)).

27          An attorney's incorrect prediction as to the likely

28   sentence following a guilty plea does not amount to erroneous advice

United States District Court
For the Northern District of California

1   or satisfy the deficient performance prong of <u>Strickland</u> simply

2   because the trial court ultimately imposed a longer sentence.

3   <u>Womack</u>, 497 F.3d at 1002-03; <u>see also</u> <u>United States v. Garcia</u>, 909

4   F.2d 1346, 1348 (9th Cir. 1990) (explaining that an erroneous

5   sentence prediction "does not entitle a defendant to challenge his

6   guilty plea"); <u>Shah v. United States</u>, 878 F.2d 1156, 1162 (9th Cir.

7   1989) (finding that an inaccurate sentence prediction was not

8   prejudicial).  And, where a defendant was informed of the potential

9   sentence he could receive prior to entering his guilty plea, he

10  cannot establish prejudice from counsel's incorrect prediction as to

11  his sentence.  <u>Womack</u>, 497 F.3d at 1003.

12          As an initial matter, Petitioner's "conclusory suggestions

13  that his trial . . . counsel provided ineffective assistance fall

14  far short of stating a valid claim of constitutional violation" and

15  therefore do not warrant habeas relief.  <u>Jones v. Gomez</u>, 66 F.3d

16  199, 205 (9th. Cir 1995).  Petitioner puts forth no evidence to

17  demonstrate trial counsel's representation fell below an "objective

18  standard of reasonableness."  <u>Hill</u>, 474 U.S. at 57.  In fact, the

19  record shows that at the sentencing hearing, Petitioner expressed

20  general satisfaction with his attorney, noting that counsel was

21  "very good," and that they "talk[ed] all the time."  Doc. #21-2, Ex.

22  B1 at 6.  Moreover, the evidence before the Court belies

23  Petitioner's claim that trial counsel *assured* him he "would be

24  granted probation if [he] pled guilty to mayhem."[4]

25  _____

26          [4]   Even Petitioner's appointed appellate counsel advised him
    against raising a claim that trial counsel was ineffective:  "I highly
27  disagree  with  your  desire  to  challenge  [trial  counsel's]
    representation based on ineffective assistance of counsel grounds.[].
28  As you note, your plea discussions will come down to his word against
    yours, and the Court is not going to credit your version of what was

United States District Court
For the Northern District of California

1    In a letter from trial counsel to Petitioner after he was
2 sentenced, which Petitioner includes as an attachment to his
3 Petition, trial counsel wrote, "It's true that I told you I was
4 *hopeful* you could get probation.  However, I also told you it would
5 be critical for you to make a good impression on the probation
6 officer who was preparing your pre-sentence report, and that that
7 would require some show of remorse.  I felt that you blew it when
8 you took an aggressive stance with the officer, challenging her
9 credentials to judge you, rather than looking inside and judging
10 yourself."  Doc. #1, Ex. F (emphasis added).  This document reflects
11 trial counsel's mere expression of "hope" that his client might get
12 probation, rather than a prison term.  It is not, as Petitioner
13 would have it, a "prediction" or guarantee from counsel that
14 Petitioner would avoid prison entirely and receive probation.  As
15 such, counsel's advise to Petitioner was a far cry from a "gross
16 mischaracterization of the likely outcome of a plea bargain" or
17 "erroneous advice on the probable effects of going to trial."  See
18 Sophanthavong, 378 F.3d at 868.

19    Further, Petitioner does not allege, let alone establish,
20 that but for counsel's advice, he "would not have pleaded guilty and
21 would have insisted on going to trial."  Womack, 497 F.3d at 1002.
22 Instead, Petitioner merely asserts, without setting forth any
23 factual support, that he is entitled to relief based on ineffective
24 assistance of counsel.  Conclusory allegations of ineffective
25 assistance of trial counsel do not entitle Petitioner to relief,
26 however.  See Jones, 66 F.3d at 205.

27

28 said between you."  Doc. #1, Ex. E.

United States District Court
For the Northern District of California

Additionally, the Court notes Petitioner received significant benefits from his plea agreement.  In exchange for his guilty plea to mayhem and false imprisonment by violence, the district attorney dropped the residential burglary and assault with intent to commit rape counts, both of which were alleged as serious and violent felonies for purposes of future enhancements under California's Three Strikes Law.  Doc. #21-2, Ex. A1 at 5-9. Petitioner was sentenced to four years and eight months in state prison; the maximum sentence he faced on these counts was eleven years.  Without the plea bargain, Petitioner faced a maximum sentence of twenty three years in prison:  eight years for mayhem (Cal. Penal Code § 204); three years for false imprisonment by violence (Id. §§ 236 & 18); six years for burglary (Id. § 461); and six years for assault with attempt to commit rape, (Id. § 220).  By accepting the plea agreement, Petitioner was sentenced to a four-year, eight-month term of imprisonment and avoided a much longer potential term had he proceeded to trial and been convicted on all four counts.

Under the circumstances, it cannot be said that the state courts' rejection of Petitioner's claim was an unreasonable application of Strickland.  See 28 U.S.C. § 2254(d).  Petitioner has not established "that (1) his 'counsel's representation fell below an objective standard of reasonableness,' and (2) 'there is a reasonable probability that, but for [his] counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Womack, 497 F.3d at 1002, (quoting Hill, 474 U.S. at 57-59).  Petitioner is not entitled to federal habeas relief on his claim of ineffective assistance of counsel.

C

Petitioner's final claim is that his due process rights were violated when the court admitted "fabricated" crime scene photographs of the victim at the sentencing hearing. Upon arriving at the crime scene, police took photographs of the victim in the position she was found to capture her physical state before the paramedics arrived. Doc. #21-2, Ex. B2 at 25-26. Petitioner claims the pictures were fabricated because the wall against which the victim was leaning, as shown in the photographs, was different from the wall against which the victim was reportedly leaning, as documented in the police report narrative.

"It is well-settled that conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief." Jones, 66 F.3d at 204 (internal citations omitted). Here, Petitioner merely asserts that the photographs of the victim were fabricated. He does not provide evidence of photography tampering nor does he demonstrate how the alleged discrepancy between the wall depicted in the photographs and the wall as described in the police narrative establishes that the photographs were somehow fabricated. He also fails to demonstrate any prejudice resulting from the admission of the allegedly fabricated photographs.

A careful review of the record also makes clear that the admission of the photographs did not prejudice Petitioner. Under California law, mayhem is punishable by a term of imprisonment of two, four, or eight years. Cal. Penal Code § 204. At the time Petitioner was sentenced, there was a statutory presumption in favor of imposition of the middle term. See Cal. Penal Code § 1170(b) (2005) ("When a judgment of imprisonment is to be imposed and the

14

statute specifies three possible terms, the court shall order imposition of the middle term[] . . .").  The trial court did not rely on the photographs to deviate from the presumed middle term on both the mayhem and false imprisonment by violence counts; rather, in considering all the evidence, the trial court found the middle term was appropriate.  Doc. #21-2, Ex. B2 at 49-51.  Moreover, the photographs showed the victim's face was covered in blood, with duct tape covering her mouth.  Doc. #21-2, Ex. B2 at 26.  Whichever wall the victim was leaning against when she was photographed would do nothing to affect her bloodied and battered physical condition. Petitioner is not entitled to federal habeas relief on this claim.[5] See 28 U.S.C. § 2254(d).

V

        For the foregoing reasons, the Petition for a Writ of Habeas Corpus is DENIED.

        The Clerk shall enter Judgment in favor of Respondent and close the file.


        IT IS SO ORDERED.

DATED       07/24/09           _____
                               THELTON E. HENDERSON
                               United States District Judge


G:\PRO-SE\TEH\HC.07\Hamann-07-6008.petition denied.wpd

------------------------

        [5]  Because the admission of the crime scene photographs was not erroneous, Petitioner's derivative claim of ineffective assistance of counsel for failing to object to their admission necessarily fails as well.  See Strickland, 466 U.S. 668.

15